UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHI HOANG LY (A-027-343-497),

Petitioner,

v.

WARDEN, MESA VERDE DETENTION CENTER

Respondent.

No. 1:26-cv-5839-TLN-CSK

ORDER; FINDINGS & RECOMMENDATIONS

Petitioner Phi Hoang Ly (A-027-343-497), a native and citizen of Vietnam who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] On September 25, 1984, petitioner entered the United States as a refugee. On March 15, 2012, an immigration judge ordered petitioner removed. That same day, petitioner was released from the custody of U.S. Immigration and Customs Enforcement ("ICE"). On May 18, 2026, petitioner was taken back into ICE custody. This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Vietnam. (ECF No. 9 at 1.) On September 25, 1984, petitioner entered the United States as a refugee and adjusted to Lawful Permanent Resident. (ECF No. 1 at 5; ECF No. 9 at 1.) On March 15, 2012, an immigration judge ordered petitioner removed to Vietnam, and petitioner waived appeal. (ECF No. 9 at 10.) On March 15, 2012, petitioner was released from ICE custody. (ECF No. 10 at 2). Petitioner has a criminal history and has been convicted of different charges. (ECF No. 9 at 1-2) On May 18, 2026, petitioner was again taken into ICE custody. (ECF No. 1 at 5.) On June 15, 2026, ICE submitted a request for a travel document to Vietnam.[2] (ECF No. 9 at 2, 5-24.)

## II. PROCEDURAL BACKGROUND

On July 27, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel. (ECF No. 1.) On July 29, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings. (ECF No. 5.) On August 27, 2026, respondent timely filed an opposition to the petition. (ECF No. 9.) On September 8, 2026, petitioner filed a reply. (ECF No. 10.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges

[2] In November 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU") that created a process for deporting immigrants who entered the United States before 1995. See Duong v. Warden, 1:25-cv-1771 DAD CSK, 2026 WL 177767, at *1 n.2 (E.D. Cal. Jan. 22, 2026).

to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner challenges his re-detention based on a violation of the Fifth Amendment due process clause.[3] (ECF No. 1 at 16-17.) In the opposition, respondent claims that petitioner is detained under 8 U.S.C. § 1231(a)(6) to effectuate the final order of removal. (ECF No. 8 at 1.) Respondent also appears to claim that petitioner is detained pursuant to 8 C.F.R. § 241.13(i)(2). (Id. at 2-3.)

### A. Due Process Claim

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90-day removal period has passed where petitioner was ordered removed on March 15, 2012 and petitioner waived appeal. (ECF No. 9 at 10.) Respondent does not dispute that petitioner was last released from ICE custody in March 2012. (Id. at 1-3.)

Citing Zadvydas, respondent appears to argue that petitioner's detention under § 1231(a)(6) is presumptively reasonable because petitioner has been detained less than six months. (Id. at 2.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to

---

[3] Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his re-detention pursuant to 8 U.S.C. § 1231 and relevant regulations.

believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). Petitioner was previously detained, then released, presumably on supervised release, for over a decade, and his 90-day removal period expired long ago.[4] It is clear that petitioner has been detained beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Respondent does not assert that petitioner violated any conditions of his prior release. (See ECF No. 9).

In the opposition, respondent appears to claim that petitioner is detained pursuant to

[4] Petitioner asserts that in 2012, after he checked in one time with ICE in Dallas, Texas, he was told he no longer had to report, and that he was not on any type of supervision thereafter. (ECF No. 10 at 3). Respondent asserts that petitioner was released on supervision, but does not provide any information regarding any conditions of release or any documentation, including related to revocation. (See ECF No. 9 at 2.) The Court therefore assumes that petitioner was released on an Order of Supervision with conditions of release.

8 C.F.R. § 241.13(i)(2) because his Order of Supervision was revoked on account of changed circumstances that made petitioner's removal significantly likely in the reasonably foreseeable future. (ECF No. 9 at 2-3.) Respondent argues that petitioner's detention under 8 C.F.R. § 241.13(i)(2), which is less than six months, is presumptively reasonable under 8 C.F.R. § 241.13(j), which provides for a custody redetermination review process for noncitizens detained beyond six months. (Id. at 3.) This argument is unpersuasive. Section 241.13(j) provides for a custody redetermination review process for noncitizens detained under 8 C.F.R. § 241.13(i) beyond six months. Because petitioner challenges his initial detention under 8 C.F.R. § 241.13(i)(2) and has not been detained six months, 8 C.F.R. § 241.13(j) is not applicable.

1. Changed Circumstances

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation who are released under an Order of Supervision with conditions of release. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3.

Respondent has not met his initial burden of proof to show that petitioner's removal is in fact significantly likely in the reasonably foreseeable future. The only changed circumstance that respondent appears to identify in petitioner's case is that the Department of Homeland Security ("DHS") submitted a travel document request to the Government of Vietnam. (ECF No. 9 at 1-2.) Respondent fails to explain why a travel document from Vietnam was not previously obtained since 2020 when the MOU was signed, or why Vietnam is likely to issue a travel document for

petitioner in the reasonably foreseeable future. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Respondent does not explain whether removals to Vietnam are common, does not identify what considerations the Government of Vietnam might take into account when deciding whether to issue a travel document, and does not explain whether the Government of Vietnam will look favorably on petitioner's case. See Yang-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). Respondent has provided no update in over three months on the status of the travel document request. (See Docket.)

This Court also observes that Section 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025). Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on May 18, 2026. Instead, the record shows that the government did not submit a request to Vietnam for a travel document until June 15, 2026—almost one month after re-detaining petitioner. (ECF No. 9 at 5.) To the extent the changed circumstance could be based on the travel document request after petitioner's re-detention, petitioner's re-detention

violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before petitioner's re-detention on May 18, 2026.

For the reasons provided above, respondent has failed to meet his burden of demonstrating changed circumstances indicating a significant likelihood of removal.

2. Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025). Respondent does not assert, and has not provided any evidence, that it notified petitioner of any asserted changed circumstances. (See ECF No. 9.) Petitioner asserts that he was re-detained without a pre-deprivation hearing and that circumstances have not changed, indicating that he was not provided notice. (ECF No. 10 at 2, 5.) Accordingly, respondent has not shown that it complied with § 241.13(i)(2).

Section 241.13(i)(3) requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Respondent does not assert, and has not provided any evidence, that it provided petitioner with any interview following re-detention. (See ECF No. 9.) Accordingly, respondent has not shown that it complied with § 241.13(i)(3).

The Court finds that respondent violated its own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. Respondent's failure to notify petitioner of the reasons for revocation beyond "changed circumstances" and failure to provide petitioner with a prompt interview following his re-detention violated 8 C.F.R. § 241.13(i)(3). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

3. Due Process

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized

explanations of the changed circumstances giving rise to revocation. See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondent identifies no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" were not provided to petitioner as required by the government's own regulations. See 8 C.F.R. § 241.13(i)(3).

For the reasons above, this Court recommends that the petition be granted as to the due process claim alleging that petitioner's re-detention is unlawful because the government failed to demonstrate changed circumstances establishing a significant likelihood of petitioner's removal to Vietnam in the reasonably foreseeable future, and because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

**B. Remedy**

Based on the recommendation that the petition be granted as to the due process claim, this Court recommends that petitioner be immediately released to return him to the status quo before

the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy"). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release in 2012 before his re-detention on May 18, 2026.

**V. MOTION FOR APPOINTMENT OF COUNSEL**

Petitioner filed a motion for appointment of counsel. (ECF No. 6.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends the petition be granted and petitioner be released, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

**VI. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 6) is denied without prejudice; and

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to the due process claim.
2. Petitioner Phi Hoang Ly (A-027-343-497) be immediately released from ICE custody under the same conditions he was previously released in 2012. At the time of release, respondent shall return to petitioner all of petitioner's possessions, including petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.). Respondent be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures. Because petitioner is proceeding pro se, respondent be further directed to file a status report within seven (7) days from the date of his release.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 6, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Ly5839.imm.157.release/10